IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JOHN ROSS MCKINNEY                                                                PLAINTIFF

v.                                      Civil No. 6:15-CV-06077

ROBBIE PLYLER (Lt. CID, Clark County                                              DEFENDANTS
Sheriff's Office), BRIAN DANIEL (Sgt.
CID, Clark County Sheriff's Office), Becky
Ussery[1] (Domestic Violence, Clark County
Courthouse)

## ORDER

Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 48).

## I. BACKGROUND

Plaintiff filed his Complaint on June 22, 2015, in the Eastern District of Arkansas. (ECF No. 2). He filed his Amended Complaint on July 13, 2015. (ECF No. 5). The case was transferred to this District on July 21, 2015. (ECF No. 7).

In his Amended Complaint, Plaintiff alleges Defendants violated his constitutional rights when they arrested and charged him with Felony Domestic Battery against his wife, Amber McKinney, because he was the actual victim of the domestic battery. He also alleges Defendant Plyler denied him medical care when he arrested him. (ECF No. 5 at 4-11).

Plaintiff alleges he was arrested by Defendant Plyler on March 19, 2015, at the Baptist Health Emergency Room when he sought treatment for a cracked rib, black eye, upper and lower "busted lips," large head contusion, and possible concussion. (*Id.* at 4-5). He alleges the

---
[1] Documents submitted by Defendants indicate the correct last name for this Defendant is Ursery. (ECF No. 50-3).

1

Defendants did not interview him or take any photographs of his injuries, even though his injuries were much more serious than those sustained by his wife. (*Id*. at 5). He alleges Defendant Plyler arrested him as he was being processed by the emergency room administration, thereby denying him medical care. (*Id*. at 4). He alleges he was arrested for Domestic Battery in the Third Degree, but his charge was upgraded to Second Degree Domestic Battery "an hour later." (*Id.*).

Plaintiff alleges he received a "Facts Constituting Reasonable Cause" form dated March 22, 2015, from Defendant Daniel. Plaintiff alleges this form stated his wife had sustained a fractured right wrist in addition to her other injuries. (*Id.* at 5). Plaintiff alleges this was a "complete fabrication to ensure my illegal detainment," because prior photos taken by Defendant Ursery showed her using a fully functional right wrist to hold her mouth open. (*Id.*).

Plaintiff further alleges his wife was known as Amber Inez Williams prior to their marriage. (*Id.* at 7). He alleges she had a history of violent domestic disputes, and provided a newspaper clipping of an altercation between them prior to their marriage. In the article, she was noted to be the aggressor in the domestic assault and had further promoted violence in front of a juvenile. (*Id* at 7, 10). Plaintiff alleges these facts should have been discovered if Defendants had actually performed an investigation. (*Id*. at 7).

Plaintiff alleges he was told on March 22, 2015, that he would be released. However, after he signed the release form for a Third Degree Domestic Battery, he was informed his release required him to be on GPS monitoring, which he could not afford, so the release papers were "trashed." (*Id.* at 5). "Two hours later" he was taken before a Judge, charged with Second Degree Domestic Battery, given a $75,000 bond and GPS monitoring at his own expense. (*Id*.). Plaintiff's Amended Complaint was dated July 9, 2015, and Plaintiff alleges he had been detained since

March 19, 2015 with no bond reduction hearings, no pre-trial motions, and no evidence proving him guilty. (*Id*.).

Plaintiff's claims against a prosecutor and judge were dismissed at pre-service screening on March 14, 2016. (ECF No. 22). Plaintiff's official capacity claims were dismissed after Defendants' Motion to Dismiss on February 9, 2017. (ECF No. 32).

Defendants filed their Motion for Summary Judgment without supporting documents on May 18, 2018. (ECF No. 48). The complete Motion for Summary Judgment was filed on May 21, 2018. (ECF No. 49). Documents submitted with the Motion provide additional background and context to Plaintiff's Complaint.

On March 19, 2015, the Clark County Sheriff's Office received a call at approximately 6:57 p.m. on March 19, 2015. The caller reported that a woman was "laying in the middle of [H]ighway 8," she was bleeding from the mouth, and an ambulance had been called. (ECF No. 50-1 at 2). When Defendant Plyler arrived at the scene, the woman was identified as Amber McKinney. She told him her husband, John McKinney, had beaten her and thrown her out of a moving vehicle due to an argument over a Facebook request she had received. (*Id*.; 50-2 at 1). Defendant Plyler observed that she had a large "knot/bruise" on the right side of her head, cuts on her left knee, her upper lip was "busted," and she thought a finger on her left hand was broken. (*Id*.). She was taken to the Baptist Health Medical Center – Arkadelphia by ambulance. (*Id*.; ECF No. 50-3 at 2). Defendant Ursery, the Victim Services Director for Clark County, Arkansas, was called to the hospital, where interviews and photos were taken. (ECF No. 50-1 at 2; 50-3 at 1). Photos of Amber McKinney showed cuts to her lips, mouth, and tongue. (ECF No. 50-4).

While Defendant Plyler was at the hospital, Plaintiff called Amber McKinney's phone several times. (ECF No. 50-2). Defendant Plyler answered the phone and spoke with Plaintiff.

3

Plaintiff told him he was actually the victim, as Amber McKinney had beaten him. Defendant Plyler was unable to conduct a formal interview with Plaintiff over the phone because Plaintiff was "belligerent." (*Id*. at 1).

Plaintiff then arrived at the hospital complaining of broken ribs. (ECF No. 50-1 at 2; 50-2 at 1). Defendant Plyler observed that Plaintiff was able to talk, walk, move, and function "fine." No apparent injuries were noted for Plaintiff. (50-1 at 3; 50-2 at 2). Based on Amber McKinney's injuries, her statements, and witness statements, Defendant Plyler arrested Plaintiff for Domestic Battery and took him to jail (ECF No. 50-1 at 3; 50-2 at 2). At the jail, EMS (Emergency Medical Services) was called to evaluate Plaintiff's condition, and he was "cleared." (ECF No. 50-2 at 2). Once Amber McKinney was treated, Plaintiff was returned to the hospital for examination. (50-1 at 3; 50-2 at 2). Defendant Plyler was not involved with Plaintiff's criminal case after the March 19, 2015, arrest. (ECF No. 50-2 at 2).

Medical records from Baptist Health Medical Center – Arkadelphia, indicate Plaintiff was admitted at 12:22 a.m. on March 20, 2015. (ECF No. 50-6 at 1). He presented with a complaint of a rib injury. (*Id*. at 3). On examination, he exhibited tenderness in the right rib cage, with no edema. He exhibited tenderness on the heel of the right hand. He had normal range of motion. Contusions[2] to his rib, nose, and hand were noted, but did not require workup. A headache and urinary tract infection were also noted, but did not require workup. (ECF No. 50-6 at 4). Plaintiff received x-rays of his head, right hand, and right ribs. No new fractures were apparent in the right rib or elsewhere. (*Id*. at 5-7). Healed fractures were apparent at the second and fifth metacarpals. (*Id*. at 7). There was no evidence of head injury or abnormality. (*Id*. at 5). Plaintiff also received a CT scan of the head, due to his report of trauma and headache. The CT scan was negative for

---

[2] Bruises. https://www.merriam-webster.com/dictionary/contusion#medicalDictionary (last accessed Jun. 20, 2018).

any injuries or abnormalities. (*Id*. at 8). Plaintiff received two tablets of acetaminophen and a prescription for antibiotics. (*Id*. at 10). Plaintiff's urine drug screen was positive for THC and cocaine metabolite. (*Id*. at 9). Plaintiff was discharged from the hospital on March 20, 2015, at 2:16 p.m. (*Id*. at 2).

On March 22, 2015, Defendant Daniel spoke with Amber McKinney on the phone, and she told him that she had a fractured wrist. (ECF No. 50-7; 50-8). He obtained her medical records and determined that Plaintiff would likely be charged with Domestic Battery in the Second Degree. (ECF No. 50-8).

Defendant Daniel completed an Affidavit of Facts Constituting Reasonable Cause (hereafter Probable Cause) against Plaintiff for Domestic Battery in the Second Degree on March 22, 2015. (ECF No. 50-10). This Affidavit noted Amber McKinney's physical injuries, including cuts in her upper lip, abrasions to the side of her head and to her right knee, and a fractured right wrist. It stated she had identified Plaintiff as her attacker. (*Id*. at 2). Plaintiff appeared before Clark County Circuit Judge McCallum on March 22, 2015, for his first appearance. The Court found probable cause to detain him on the charge of Domestic Battery in the Second Degree, set bond for $75,000 and required electronic monitoring at Plaintiff's expense. (ECF No. 50-11). Arraignment was set for April 14, 2015. (*Id*.). The Order was signed on March 22, 2015, but not filed by the Clerk of Court until April 7, 2015. (*Id*.).

Plaintiff filed two jail grievances[3] stating he was being illegally detained because he was the victim of domestic battery. (ECF Nos. 50-13). Defendant Daniel responded to one grievance, stating he had not been aware of Plaintiff's claim to be the victim, and telling Plaintiff to make an appointment through jail administration to speak with him. (*Id*. at 1). Plaintiff met with Defendant

---

[3] The grievance forms did not include a space for the dates, and no date information was written on either grievance.

5

Daniel on April 13, 2015, for an interview. (ECF No. 50 at ¶ 35). The Court reviewed the videotape of this interview. (ECF No. 50-5). Plaintiff stated the incident started while he was driving Amber McKinney home from work because he questioned her about a Facebook request she had received from another man and she "went haywire." Plaintiff stated he told her that if she hit him again he was going to hit her back. As a result, there was more than one physical altercation between himself and Amber McKinney in and around the vehicle that day, but he stated she was the aggressor for all of them. After one of these altercations, Amber McKinney got out of the vehicle at a stop sign and sat in the highway. Plaintiff followed her, she returned to the car, and another "scuffle" ensued. According to Plaintiff, both parties hit, bit, and spit at each other during these altercations. Amber McKinney also grabbed him by the penis and would not let go, despite the fact the he had undergone surgery for a broken urethra early in the year when she had pulled on and "broken his penis." Plaintiff asked why he was not interviewed before being arrested and charged when there were two people involved. Plaintiff further noted past incidents where Amber McKinney had assaulted him or other women.

Defendant Daniel interviewed Amber McKinney again on October 14, 2015. (ECF No. 50 ¶ 26). In the video of this interview, she described a pattern of beatings and violence from Plaintiff, but also referenced at least one prior arrest for herself. (ECF No. 50-9). She stated she "broke his penis" in an attempt to escape him during a prior beating. (*Id*.).

On March 17, 2016, Plaintiff's charges were amended to Domestic Battery in the Third Degree. (ECF No. 50-14). An Order transferring the case to District Court was signed the same day. (ECF No. 50-15). Plaintiff was released from the Clark County Jail on March 18, 2016. (ECF No. 17). After several continuances, the case was *nolle prossed* on May 28, 2016, because Amber McKinney did not wish to prosecute. (ECF No. 50-16).

6

On May 22, 2018, this Court entered an Order directing Plaintiff to respond to the Summary Judgment Motion by June 12, 2018. (ECF No. 52). On June 13, 2018, Defendants filed a Motion to Deem Facts Admitted, noting Plaintiff had not filed his Response as directed. (ECF No. 55). Plaintiff filed his Response on June 15, 2018. (ECF No. 56).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

7

### III. ANALYSIS

Defendants argue summary judgment should be granted in their favor for the following reasons: (1) Defendant Ursery had no personal involvement in Plaintiff' alleged constitutional violation; (2) Defendant Plyler is entitled to qualified immunity for Plaintiff's claim of deliberate indifference to his medical needs; (3) Defendant Plyler had probable cause to arrest Plaintiff for Felony Domestic Battery, and is therefore entitled to qualified immunity; (4) Defendant Daniel was not involved in his arrest on March 19, 2015, and his affidavit for warrant of arrest on March 22, 2015, was supported by probable cause; (5) although Plaintiff was too belligerent to interview prior to arrest, Defendant Daniel investigated Plaintiff's claims that he was the victim of this incident and determined his claims to be untruthful; (6) Plaintiff's detention in the Clark County Jail and Defendants' behavior did not rise to the level of a constitutional violation. (ECF No. 51 at 6-16).

In his Response, Plaintiff argues Defendant Plyler admitted Plaintiff told him he was the victim of the domestic battery, but still refused to take Plaintiff's statement. (ECF No. 56 at 1). He notes Defendant Ursery mentioned speaking with a witness, but he and Amber McKinney were alone in the car. (*Id*.). He notes there is no mention of the wrist injury in the Incident Report (ECF No. 50-1), therefore the recorded phone interview between Defendant Daniel and Amber McKinney discusses an injury that had not been mentioned previously. (*Id*.). He emphasizes there are no records indicating any statement was taken from him prior to him being declared the aggressor in the incident. (*Id*. at 2). Plaintiff states he disputes Defendants' Exhibits 1-4, 7-9, and 14-16, but does not indicate what, exactly, he disputes in these documents.

### A. Defendant Ursery

Plaintiff's sole claim against Defendant Ursery is she did not interview him or take any photographs of his injuries, therefore she did not properly investigate his claim that he was the victim in the incident before he was arrested.

To establish liability under § 1983 there must be some personal involvement on the part of the Defendant. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). The record indicates Defendant Ursery had no personal involvement with Plaintiff's criminal case and was actually prohibited from assisting him in any way. In her affidavit for this case, Defendant Ursery identified herself as the Victim Services Director for Clark County, Arkansas. (ECF No. 50-3). She is called by law enforcement to respond to crime scenes or to the hospital. Her duties include "helping victims navigate the criminal justice system, assisting with safety plans, advising victims of court dates, assisting with obtaining counseling, and accompanying victims to court." (*Id*. at 1). The Victim Services Program is prohibited from assisting offenders in domestic violence cases. (*Id*.) Defendant Ursery is not an attorney and does not make decisions as to whether a suspect should be arrested, charged, or detained. (*Id*. at 2). Further, her opinions as to guilt or innocence in a case are not sought by, and do not influence, any decision made by law enforcement or the prosecutor. (*Id*.)

In this case, Defendant Ursery was called by law enforcement to attend to Amber McKinney as a victim of domestic violence. Amber McKinney identified Plaintiff as the offender in the case. As such, Defendant Ursery was prohibited from assisting Plaintiff. Nor is there any evidence in the record that Defendant Ursery was aware of Plaintiff's claim that he was the victim in the incident or had any input into the decision to arrest, detain, or charge him.

Because Defendant Ursery had no personal involvement in Plaintiff's criminal case, and was actually prohibited from assisting him, she is entitled to summary judgment as a matter of law.

### B. Defendant Plyler – Denial of Medical Care

Plaintiff's allegation that Defendant Plyler denied him medical care when he arrested him at the hospital is contradicted by the record. Defendant Plyler is therefore entitled to summary judgment on this claim.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotations omitted). Unless, however, the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Plaintiff's allegations fail to satisfy either prong of the deliberate indifference test. There is no evidence in the record that Plaintiff suffered from an objectively serious medical need. After physical examination, x-rays, and a CT scan, Plaintiff was diagnosed with some bruises and a urinary tract infection. He also tested positive for THC and cocaine metabolite. He was given two tablets of acetaminophen and a prescription for an antibiotic.

Even if one assumes the bruises constituted a serious medical need, there is no evidence in the record of deliberate indifference. The Clark County Sheriff's Office received the call concerning Amber McKinney laying on Highway 8 at approximately 6:57 p.m. on March 19, 2015. Defendant Plyler expressly noted that Plaintiff did not appear to be in distress when he spoke to him at the hospital prior to his arrest, as he was walking, talking, and moving "fine." Despite this,

11

EMS was called to the jail to evaluate Plaintiff shortly after his arrest. EMS "cleared" him of any injuries. Plaintiff was then taken back to the hospital at 12:22 a.m. on March 20, 2015, and admitted for evaluation and testing. The Court can discern no evidence of deliberate indifference to Plaintiff's medical needs in these facts.

Finally, Plaintiff failed to submit any verifying medical evidence that any delay in access to medical care caused by his arrest adversely affected the prognosis for his bruises or any other medical condition.

Because there is no evidence in the record of any deliberate indifference to Plaintiff's medical needs, Defendant Plyler is entitled to summary judgment as a matter of law on this claim.

### C. Defendant Plyler[4] – Warrantless Arrest - Probable Cause

Plaintiff alleges Defendants Plyler did not investigate his claim that he was the actual victim of the domestic assault before arresting him on March 19, 2015. He did not interview him or take photographs of his injuries, and failed to consider Amber McKinney's past behavior and arrests. Defendant Plyler argues the determination of probable cause was based on both Amber McKinney's assertions and the extent of her injuries. He further alleges Plaintiff was too belligerent to conduct a formal interview and did not appear to be in any physical distress at the time of arrest.

As a preliminary matter, the Court notes that Defendant Plyler's allegation of Plaintiff's belligerence does not appear on the March 19, 2015, Incident Report, appearing only in his later affidavit for this case. Therefore, although Plaintiff's positive drug test arguably supports Defendant Plyler's statement of belligerent behavior, the Court will not include that behavior in

---

[4] Plaintiff alleges only that the Defendants did not investigate; he does not delineate these claims based on date or presence. Based on the record, it is clear that Defendant Daniel was not present for, and took no part in, Plaintiff's arrest on March 19, 2015. It is therefore not necessary to address Defendant Daniel's role regarding Plaintiff's warrantless arrest on March 19, 2015.

the probable cause analysis. Nonetheless, the record is clear that Defendant Plyler had probable cause for Plaintiff's warrantless arrest on March 19, 2015.

"The law does not require law enforcement officers to conduct a perfect investigation to avoid suit for false arrest. " *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013). An officer is entitled to qualified immunity for a warrantless arrest if the arrest was supported by at least "arguable probable cause." *Id*. at 1226. "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) (internal citations and quotations omitted). Even if the officer is ultimately mistaken in his or her determination of probable cause, arguable probable cause exists if the mistake is "objectively reasonable." (*Id*.). "Whether a law enforcement officer had probable cause at the time of arrest is a question of law." *Joseph*, 712 F.3d at 1226-27.

The totality of the circumstances at the time of Plaintiff's arrest are sufficient to lead a reasonable person to believe that Plaintiff committed domestic battery against his wife. Defendant Plyler received a call from dispatch stating a woman was laying in the middle of Highway 8 and bleeding from the mouth. When he arrived at the scene he observed the victim to have a large "knot/bruise" on the right side of her head, cuts on her left knee, and a "busted lip." The victim was identified as Amber McKinney, who stated Plaintiff was responsible for her condition. Amber McKinney was taken to the hospital by ambulance and her injuries documented. Photographs submitted to the Court show cuts to her lips, mouth, and tongue. Defendant Plyler spoke to Plaintiff on the phone when Plaintiff called Amber McKinney. Plaintiff then arrived at the hospital seeking care for himself. There is no evidence in the record that Plaintiff required an ambulance

13

or any assistance to arrive at the hospital. Although Plaintiff told Defendant Plyler he was the victim of the assault, Defendant Plyler did not observe that Plaintiff suffered from any obvious injuries, and appeared to be walking, talking, and moving "fine." Extensive medical evaluation of Plaintiff shortly after his arrest supports this observation, as Plaintiff's only injuries attributable to an assault were bruises.

Given the totality of these circumstances, Defendant Plyler had probable cause to arrest Plaintiff at the hospital for the domestic battery of his wife, Amber McKinney. Although Plaintiff told Plyler he was actually the victim of the assault, he exhibited no obvious injuries, and was observed to have no difficulty in talking, walking, or moving. In contrast, Amber McKinney exhibited multiple injuries and identified him as her attacker. Faced with these facts, Defendant Plyler had probable cause to arrest Plaintiff for domestic battery on the night of March 19, 2015. *See Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1998) (officer may not ignore exculpatory evidence, but does not need to conduct a mini-trial before arresting based on credible eyewitness claims or other indicia of probable cause). That Plaintiff and his wife had a volatile history, or that the case against Plaintiff was ultimately dropped does not change the analysis of probable cause at the time of arrest.

Accordingly, Defendant Plyler is entitled to summary judgment as a matter of law on this claim.

### D. Defendant Daniel[5] –Affidavit of Probable Cause on March 22, 2015

Plaintiff alleges Defendant Daniel did not investigate his claim that he was the actual victim in the case. He further alleges Defendant Daniel's statement on the March 22, 2015, Affidavit of Probable Cause that Amber McKinney's wrist was fractured was a "complete fabrication"

---

[5] Based on the record, it is clear that Defendant Plyler's role in the investigation of Plaintiff's case ended with the arrest on March 19, 2015. It is therefore not necessary to address Defendant Plyler's role after that date.

14

intended to ensure his illegal detention. Plaintiff appears to allege that he was initially arrested for Domestic Battery in the Third Degree (a misdemeanor), and the wrist fracture was used to upgrade his charge to Domestic Battery in the Second degree (a felony). As a result of the upgrade, he was not able to meet the release conditions imposed, and remained incarcerated until his case was amended to a misdemeanor in March of 2016.

As a preliminary matter, the Court notes the March 19, 2015, Incident Report indicates Plaintiff's initial arrest was for Domestic Battery in the Second Degree. (ECF No. 50-1 at 1). His allegations concerning an "upgrade" in his charges due to the alleged wrist fracture on March 22, 2015, are therefore contradicted by the record. Similarly, as the record indicates Defendant Daniel was not aware of Plaintiff's claim to be the victim of the assault until after March 22, 2015, Plaintiff's allegation that Defendant Daniel did not sufficiently investigate his claim of victimhood before preparing the affidavit is likewise contradicted by the record.

Unless an officer engages in intentional or reckless misrepresentation in order to gain the arrest warrant, there can be no constitutional violation. *See Franks v. Delaware*, 438 U.S. 154 (1978); *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000) (citing *Franks* for the rule that a "warrant based upon [an] affidavit containing 'deliberate falsehood' or reflecting 'reckless disregard for the truth' violates Fourth Amendment"). "To show reckless disregard for the truth, we do not look simply at whether a statement included in the affidavit was true; rather, we ask whether, when looking at all the evidence available to the officer, the officer "must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported." *United States v. Neal,* 528 F.3d 1069, 1072 (8th Cir. 2008). If there is evidence of recklessness, the warrant is not automatically void. Rather, the solution is to edit out the false or reckless information and then evaluate the corrected warrant

15

for probable cause. *Bagby v. Bronhaver*, 98 F 3d. 1096 (8th Cir. 1998). Probable cause is analyzed at the time of the arrest, therefore "any later developed facts are irrelevant to the probable cause analysis for an arrest." *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008).

As discussed above, there was probable cause to arrest Plaintiff on March 19, 2015. Defendant Daniel then had additional information to support his March 22, 2015, Affidavit of Probable Cause. After the arrest, Plaintiff's medical examination and testing indicated he had no injuries other than some bruises. Defendant Daniel had a telephone conversation with Amber McKinney on March 22, 2015, during which she stated she had a fractured wrist. Defendant Daniel then obtained her medical records. (ECF No. 50-8). The Affidavit of Probable Cause which was submitted to the Clark County Circuit Court March 22, 2015, relied upon these facts. The Circuit Judge found probable cause existed based on Defendant Daniel's affidavit. Further, when Plaintiff filed a grievance at the Clark County Jail stating he was the actual victim in the assault, Defendant Daniel stated he was not aware of this claim and arranged to interview him on April 13, 2015. The Court reviewed the interview video. During the video, Plaintiff admitted his questioning of his wife over a Facebook request led to the fight. He stated he told her that if she hit him again, he would hit her back, and followed through on this statement. He admitted that the two of them then engaged in multiple physical altercations in and around the vehicle.

Plaintiff failed to allege any facts indicating Defendant Daniel engaged in intentional or reckless misrepresentation in order to gain the arrest warrant from the Circuit Judge. Even if the fractured wrist is deleted from the affidavit, sufficient probable cause existed for the arrest warrant. As discussed more fully above, Amber McKinney was found laying on Highway 8 bleeding from the mouth, exhibited visible physical injuries, and named Plaintiff as her attacker. Plaintiff exhibited no obvious physical injuries, and medical examination and testing shortly after his arrest

16

revealed he had only bruises from the incident. When Defendant Daniel was made aware of Plaintiff's claim that he was the victim, he interviewed him. Finally, the affidavit was signed by a neutral magistrate. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ("the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner").

Accordingly, Defendant Daniel is entitled to summary judgment as a matter of law on this claim.

### E. Defendant Daniel and Defendant Plyler – Prompt First Appearance

Finally, Defendants note that Plaintiff's allegations of unlawful imprisonment could be interpreted to raise a Fourteenth Amendment due process claim because he was arrested on March 19, 2015, but the Order by the Circuit Court Judge was not filed until April 7, 2015. Defendants argue, however, that prolonged detention is unlawful only when the detention occurs without appearing before a judge. (ECF No. 51 at 16-18). Alternatively, they argue that it the duty of the Clark County Jail - not the Clark County Sheriff's Deputies - to schedule first appearances. (ECF No. 51 at 18).

The Due Process Clause of the Fourteenth Amendment controls the issue of a pretrial detainee's right to a prompt appearance in court after an arrest. *See Hayes v. Faulkner County*, 388 F.3d 669, 673 (8th Cir. 2004). In *Hayes*, the Court of Appeals for the Eighth Circuit applied the framework set forth by the Seventh Circuit in *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998), in determining whether an extended detention following an arrest violated the Due Process Clause.

Applying this framework, the *Hayes* court considered the following three questions: (1) does the Due Process Clause prohibit an extended detention, without an initial appearance, following arrest by a valid warrant; (2) does the Defendant's conduct offend the standards of

17

substantive due process; and, (3) do the totality of the circumstances shock the conscience. *Hayes*, 388 F.3d at 673; *see also Luckes v. County of Hennepin*, 415 F.3d 936 (8th Cir. 2005).

The Eighth Circuit concluded that the "Due Process Clause forbids an extended detention, without a first appearance, following arrest by warrant." *Id.* With respect to first appearances, Rule 8.1 of the Arkansas Rules of Criminal Procedure provides that "[a]n arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay."

Here, Plaintiff was arrested without a warrant on the evening of March 19, 2015. He was taken to the hospital for examination and testing at 12:22 a.m. on March 20, 2015, and released at 2:16 p.m. the same day. He was taken before the Circuit Court Judge for a first appearance on March 22, 2015. The Order finding probable cause, detailing release terms, and setting his arraignment date was signed on March 22, 2015. It was filed by the Clerk of Court on April 7, 2015.

Thus, after receiving medical attention for his claimed injuries, Plaintiff was taken before a judge for his initial appearance within forty-eight hours of his release from the hospital. Nothing in these facts shocks the conscience. *See e.g. Pope v. Montgomery*, Case No. 3:14-cv-03104, 2018 WL 950260, *5 (W.D. Ark. Feb. 20, 2018) (seven-day detention prior to first appearance did not shock the conscience). Additionally, neither Defendant Daniel nor Defendant Plyler was responsible for arranging the first appearance. Accordingly, Defendants Daniel and Plyler are entitled to summary judgment as a matter of law on this claim.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 48) is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Judgment will be entered accordingly.

**IT IS SO ORDERED** this **2nd day of July 2018**.

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE